# In the District Court of the United States
# For The District of South Carolina
### BEAUFORT DIVISION

| | |
|---|---|
| Anthony Hargett, #15479-056, ) | Civil Action No. 9:07-0832-CMC-GCK |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATIONS** |
| ) | **OF THE MAGISTRATE JUDGE** |
| Federal Bureau of Prison and ) | |
| United States, ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |

## I.  INTRODUCTION

The Plaintiff, Anthony Hargett ("Plaintiff" or "Hargett"), Register Number 15479-056, is a federal prisoner who was incarcerated in the Federal Correctional Institution ("FCI") in Bennettsville, South Carolina, at the time of the events giving rise to the complaint.[1]  Proceeding *pro se,* the Plaintiff has brought this action pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* ("FTCA") against the Federal Bureau of Prisons ("BOP") and the United States, for the alleged negligent mishandling of his personal property on or after April 9, 2006, when he was placed in the FCI Bennettsville Special Housing Unit ("SHU").  [1]  The Plaintiff alleges that upon his release from the SHU, he discovered that various items of his personal property, valued at $319.00, were missing.  The Plaintiff did not recover the missing items, and asks the Court to award him $5000.00 as compensation for the negligent loss of his personal property, including the replacement cost and costs he has incurred in filing this action.  [1]

---

[1]     The Petitioner presently is incarcerated in the FCI in Butner, North Carolina.

Pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2), D.S.C., the undersigned United States Magistrate Judge is authorized to review all pretrial matters in cases involving *pro se* litigants, and submit findings and recommendations to the District Court.

## II.  THE *PRO SE* COMPLAINT

As a *pro se* litigant, Plaintiff's pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied*, *Leeke v. Gordon*, 439 U.S. 970 (1978).  *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal.  The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999).  Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Rice v. National Security Council*, 244 F.Supp. 2d 594, 596 (D.S.C. 2001), *citing Weller v. Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990).

## III.  BACKGROUND

On April 9, 2006, the Plaintiff was placed in the FCI Bennettsville SHU under Administrative Detention status.  (Plaintiff's Complaint [1] at p. 2; Defendants' Exhibit #6 [20-6], Affidavit of Donna Wells at ¶ 3).  According to the Plaintiff:

> It is customary procedure, upon an inmate entering into the SHU, for that inmate to review–with the receiving officer–an inventory form that lists all of the inmate's property that was in his cell at the regular housing unit.  This procedure is to ensure that all of the inmate's property, packed by the regular housing unit officer, was sent to the SHU and that none is missing.
> . . .
>
> During the process of [the Plaintiff] being held in the SHU, [he] was taken out of his cell, by the Property Officer, so that he could oversee an inventory of his personal property that was packed at the regular housing unit and sent to the SHU.  During the process of Hargett and the Property Officer, E. Covington, going over his property slip (BOP Form 40), to make sure everything was accounted for, Officer E. Covington, while going down the list, noticed that a lot of items of personal property listed on the Form 40 were not present.  At that point Officer E. Covington told Hargett to just go ahead and grab a few hygiene [sic] items so that he would be all right once he got back to his cell.  He told Hargett not to sign off on the property slip because something was not right, that all of the property listed on the Form 40 was not there, and that there should have been another bag of his property sent, because it was listed on the form that two bags should have been sen[t] and one of the bags could not be located at the time.  Officer E. Covington then told Hargett that he would try and find out what happened before he notified anyone else about the missing bag of property.  After a couple of days went by Hargett still had heard nothing from Officer E. Covington.  A few days later, around April 13, 2006, still having heard nothing about his property, he was told that he was being released from SHU.  The time was around 3:45PM that day, and it was almost time for the mandatory 4:00PM stand-up daily count, so the releasing Officer, Cash, was rushing Hargett and about 6 other inmates to hurry up so that they would be out of SHU before count started.  Officer Cash told all the inmates to sign their property forms, rushing everybody around.  Hargett at that time told officer Cash that he was not going to sign his property form b[e]cause a bag of his property was still missing and that he already discussed all this with the Receiving Officer, E. Covington.  Officer Cash then told Hargett, "You must not be trying to get out of the SHU today."  Hargett then said, "Well, what about my lost property?"  Officer Cash then told Hargett to just sign the Form 40 and that he would take care of the lost property problem later, that he had to get him and the others out of the SHU and back to the regular housing unit before the count started.
>
> The next morning Hargett went up to the Lt.'s bench and waited for Lt. Wells to come to work.  She was the SHU Operation Lt. Officer.  When she came in, she saw Hargett sitting on the Lt.'s bench and asked how she could help him.  Hargett then told her all about his lost property problem.  How not all of his personal property was sent to SHU upon his entering SHU and that it had not been located.  Lt. Wells took Hargett's name and number and told him to give her a couple of days so that she could have someone try and locate his lost property.  After a couple of days went by, Hargett went back to Lt. Wells and she told Hargett to list on paper everything that was still missing, where he had purchased it, and to given her some receipts showing that he in fact had purchased the missing item[s] of personal property.  Hargett did all that was requested, he provided receipts and itemized every bit of missing property.
>
> The next day, Hargett went back to see Officer E. Covington again, and told him the same thing that he had told Lt. Wells, he told Hargett that he would give Lt. Wells a call.  That very same day at lunch, Hargett went and spoke with Captain Bowling and explained everything to her, she told Hargett that she would pay Hargett back for his loss if everything he told her came out to be true.  She told Hargett to go and tell Officer Cash to call her and that if he explained everything as

> Hargett did (about being rushed out of SHU, explaining why he signed the Form 40, when some of his property was still missing) she would take care of everything. For the next several days, Captain Bowling and Officer Cash just kept giving him the run-around. During these few days Hargett got the chance to speak with Lt. Edwards, explaining to him the situation of his lost property, he gave Lt. Wells a call himself to see what he could find out, he then told Hargett that he would have the Compound Officer go to SHU to see if they could locate his missing property. The next day a small trash bag containing some of Hargett's property was found. Lt. Edwards later that night, around 10:55PM, called Hargett up to his office for him to pick up this newly located property. Before Hargett could take it, Lt. Edwards called Lt. Wells, she told Lt. Edwards not to release it because there was still some property missing, and until they found it all not to release any of it. About two days later Lt. Wells called Hargett to the Lt. Office and told Hargett that she was releasing what property that was found, and that he should just mark off the list she had of his missing items what was found. After that, nothing was ever done about the other missing items, and Hargett was advised to file a tort claim for the remaining missing items, which were many.
>
> Hargett filed said tort claim which was denied at all levels.[2]

Both the Plaintiff and the Defendants have produced copies of Hargett's Inmate Personal Property Record dated April 9, 2006. (*See* Record, attached to Complaint [1]; Exhibit #7 [20-7], Inmate Personal Property Record). According to Lt. Donna Wells, who was involved in the investigation of the Plaintiff's tort claim, "[s]ubsequent to [Plaintiff's] placement in the SHU, one bag of personal property belonging to him was inventoried, packed, and transported to the SHU." (Defendants' Exhibit #6 [20-6], Wells Affidavit at ¶ 3). On April 12, 2006, a second bag of personal property belonging to the Plaintiff was transported to the SHU, and an inventory of that property was made on that day. (Defendants' Exhibit #6 [20-6], Wells Affidavit at ¶ 3); (Exhibit #8, Inmate Personal Property Record, dated April 12, 2006). The Defendants state that while the Plaintiff was confined in the SHU, he was given the opportunity to review his property and retrieve hygiene items to keep in his cell. (Defendants' Exhibit #6 [20-6], Wells Affidavit at ¶ 4). When Plaintiff reviewed the property, he indicated to the Officer that he believed some of his property was missing.[3] (*Id.*). The Officer indicated two bags of personal property had been sent to the SHU, but he was only able to locate the one bag. (*Id.*). The Officer informed the

---

[2]     Complaint [1] at pp. 2-5.

[3]     The Officer is not identified in Lt. Wells' Affidavit.

Plaintiff that upon his release from the SHU, his property would be inventoried with him and at that time he could inform staff of what property was missing. (*Id.*).

On April 13, 2006, before the Plaintiff was released from the SHU, his personal property was inventoried in his presence. (Defendants' Exhibit #6 [20-6], Wells Affidavit at ¶ 5). The Plaintiff signed the Inmate Personal Property Record (BP-383) indicating that the inventory was a complete and accurate accounting of his personal property except for a few items that were noted as missing: 1 radio, 1 headphones, 2 shorts, sweat clothes, and 1 sweat shirt. (Plaintiff's Inmate Personal Property Record, attached to Complaint [1]; Defendant's Exhibit #7 [20-7], block 10b).

On April 24, 2006, according to the Defendants, prison officers found the bag of personal property items that had been misplaced and the Plaintiff was summoned to retrieve his additional property. (Defendants' Exhibit #6 [20-6], Wells Affidavit at ¶ 6). This additional property consisted of the items he had listed as missing on April 13, 2006–1 radio, 1 headphones, 2 shorts, sweat clothes, and 1 sweat shirt. (Defendants' Exhibit #8 [20-8], block 10b). The Plaintiff received these items and signed for them. (*Id.*)

On April 28, 2006, the Plaintiff filed a Claim for Damage, Injury, or Death (Standard Form 95) claiming that he had lost additional items of his personal property, worth $319.00, during the time he was confined in the SHU. (Plaintiff's Exhibit 1 to Complaint [1]; Defendants' Exhibit #2 [20-2]). The Plaintiff alleged he was missing the following items: 1 pair of New Balance black boots, 1 pair of Nike tennis shoes, 8 pair athletic socks, 1 pair sunglasses, 10 grey t-shirts, 14 pairs of boxer briefs, 1 grey winter cap, 1 baby powder, 1 toothbrush, and 1 toothbrush holder. (*Id.*). However, these items had been inventoried and accounted for on the April 13, 2006 inventory. In other words, these items had **not** been listed as missing on the April 13, 2006 inventory. (Defendants' Exhibit #7 [20-7]).

The Plaintiff's claim was investigated, and his claim was denied (Plaintiff's Exhibit #6 attached to Complaint [1]; Defendants' Exhibit #3 [20-3]) on the grounds that on April 13, 2006,

the Plaintiff had signed an Inmate Personal Property Record which had set forth a list of the property he had claimed was missing (1 radio, 1 headphones, 2 shorts, sweat clothes, and 1 sweat shirt), and he also had signed a receipt which indicated that those missing items had been returned to him on April 24, 2006.  (Defendants' Exhibits # 7 and #8 [20-7 and 20-8]).

## IV.  PROCEDURAL HISTORY

The Plaintiff filed his complaint on March 22, 2007.[4]  After it was brought in to proper form, on May 31, 2007 the court ordered the Clerk of Court to issue the summonses and forward the necessary papers to the United States Marshal for service of process.  [11]  Thereafter, on August 1, 2007, the Defendants filed their answer [19] and also their motion for summary judgment.  [20]  On August 2, 2007, the undersigned issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying the Plaintiff of the Defendants' motion for summary judgment and the timetable for a response.  [22]  On August 21, 2007, the Plaintiff filed a response in opposition to the Defendants' motion.  The Defendants did not file a reply.  At this time, the matter is ripe for review by this court.

## V.  THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The determination of the Defendants' motion for summary judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  Id. at 323; Fed. R. Civ. P. 56(c).

Summary judgment is proper if, viewed in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the

---

[4] In the event that a limitations issue were to arise, the Plaintiff will have the benefit of the holding in *Houston v. Lack*, 487 U.S. 266 (1988) with respect to the "delivery date" of his complaint.

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985).

The non-moving party is entitled to the most favorable inferences that reasonably may be drawn from the forecast evidence. *Ross*, 759 F.3d at 364. Put another way, all justifiable inferences must be drawn in favor of the non-moving party. *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990); *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion. *Felty v. Graves-Humphreys Co.*, 818 F. 2d 1126 (4th Cir. 1987). Genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions. *Stone v. University of Md. Medical Sys. Corp.*, 855 F. 2d 167 (4th Cir. 1988). Therefore, when evaluating the appropriateness of summary judgment, this Court must construe the facts are set forth in the light most favorable to Plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.") (internal quotation marks omitted); Fed.R.Civ.P. 56(c) (Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."). Accordingly, this Court must enquire "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail asa matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## VI. ANALYSIS

### A. Introduction

The facts and evidence are considered and discussed herein in the light most favorable to the Plaintiff, the party opposing summary judgment. *Pittman v. Nelms*, 87 F.3d 116, 118 (4th Cir. 1996). In addition, as mentioned earlier, as a *pro se* litigant, the Plaintiff's Complaint must

be construed liberally by this court. Nevertheless, a careful review of the relevant case law and all of the pleadings in this case has led this court to recommend, for the reasons set forth below, that summary judgment should be granted to Defendants.

### B.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1996 (the "PLRA"), codified as amended at 42 U.S.C. § 1997e(a), provides in relevant part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

The Defendants have informed the court that the Plaintiff has met the exhaustion provisions of 28 U.S.C. § 2675(a), which create a jurisdictional prerequisite to filing an action pursuant to the Federal Tort Claims Act.  *Kielwien v. United States*, 540 F.2d 676 (4th Cir. 1976); *Wilkinson v. United States*, 677 F.2d 998 (4th Cir. 1982); *Henderson v. United States*, 785 F.2d 121 (4th Cir. 1986).  Therefore, the court will turn to the merits of the case.

### C.  The Proper Defendant in this Action

The Plaintiff has named the BOP and the United States as Defendants in this FTCA suit for an alleged loss of personal property.  It is well established that federal agencies cannot be sued *eo nomine* unless specifically authorized by Congress, or unless the agency is an offspring of a suable entity.  *Blackmare v. Guerre*, 342 U.S. 513, 515, 72 S.Ct. 410 (1952); *Pink v. Modoc Indian Health Project*, 157 F.3d 1185, 1188 (9th Cir. 1998); *Commodity Futures Trading Com'n v. Hunt*, 591 F.2d 1211, 1224 (7th Cir. 1979); *Shelton v. U.S. Customs Service*, 565 F.2d 1140, 1141 (9th Cir. 1970); *Coolman v. U.S. IRS*, 117 F.Supp.2d 943, 948-49 (D.Neb. 2000).  In addition, federal agencies cannot be sued under the FTCA.  28 U.S.C. § 2679(a).  Only the United States may be sued under the FTCA.  *Id*.  "To sue successfully under the FTCA, a plaintiff must name the United States as the sole defendant."  *McGuire v. Turnbo*, 137 F.3d 321,

324 (5th Cir. 1998) (citation omitted). Therefore, it is recommended that the BOP be dismissed as a Defendant in this case, leaving the United States as the sole Defendant in this action.

### D. The Plaintiff's Amount of Damages is Limited by his Administrative Claim

In FTCA actions, the damages awarded ordinarily may not exceed the amount set forth in the administrative claim. 28 U.S.C. § 2675(b); *see also Kielwien v. United States*, 540 F.2d 676, 680-81 (4th Cir. 1976). Section 2675(b) of Title 28 provides:

> [An] action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.

This provision operates to deny recovery of an amount in excess of the claim presented to the agency. *Kielwien*, 540 F.2d at 681. The manifest purpose of the limitation is to ensure that federal agencies charged with making an initial attempt to settle tort claims are given full notice of the government's potential liability. *See Caidin v. United States*, 564 F.2d 284, 287 (9th Cir. 1977). Section 2675(b) "would be meaningless if claimants, after rejection of their claim, could institute actions for amounts in excess of the claim filed merely because they, or their attorneys, are of the opinion that the claim has a greater value." *Kielwien*, 540 F.2d at 681.

The Plaintiff claimed personal property damages in the amount of $319.00 when he presented his administrative tort claim to the BOP on April 28, 2006. (Defendant's Exhibit #1 [20-1]) The Plaintiff has not alleged "newly discovered evidence" or "intervening facts" relating to the amount of the claim, as set forth in 28 U.S.C. § 2675(b), which would permit a greater recovery. Accordingly, if the Plaintiff were to recover any amount, that amount would be limited to the amount claimed in his administrative claim–$319.00. *Kielwien*, 540 F.2d at 681.

### E. The Plaintiff's FTCA Claim

The United States cannot be sued without a waiver of its sovereign immunity. *United States v. Orleans*, 425 U.S. 807, 814, (1976). Subject to a number of express exceptions and exclusions, the FTCA waives sovereign immunity for money damages caused by the negligent or

wrongful act or omission of any employee of the United States acting within the scope of his or her employment, under circumstances where a private person would be liable to the claimant under the law of the state where the claim arose.  28 U.S.C. § 1346(b).  To succeed on his FTCA claim, the Plaintiff must prove the loss of his property was caused by the negligent or wrongful act or omission of a government employee.  28 U.S.C. § 2672.  The United States may be held liable only if the conduct complained of amounts to negligence "in accordance with the law of the place where the act or omission occurred."  *Id.*  Thus, the substantive elements of his FTCA claim are governed by South Carolina law.  *See* 28 U.S.C. § 1356(b)(1); *see also FDIC v. Meyer*, 510 U.S. 471, 478 (1994); *U.S. v. St. Louis University*, 336 F.3d 294, 300 (4th Cir. 2003).  In South Carolina, "in order to establish a claim for negligence, a plaintiff must prove the following elements:  (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by negligent act or omission; and (3) damage proximately caused by the breach."  *Huggins v. Citibank, N.A.*, 355 S.C. 329, 585 S.E.2d 275, 276 (S.C. 2003) (citation omitted).  A breach of duty exists when it is foreseeable that one's conduct may likely injure the person to whom the duty is owed.  The damages allegedly sustained must be shown to have been proximately caused, that is, causally connected to the breach of duty in order to warrant a recovery.  *Horne v. Beason*, 285 S.C. 518, 331 S.E.2d 342 (1985).

       Although state law establishes the elements required to prove negligence, the standard of care for the BOP is "fixed by 18 U.S.C. § 4042, independent of [any] inconsistent state rule[.]" *United States v. Muniz*, 374 U.S. 150, 164, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963).  Section 4042(a)(2) provides that federal prison officials have a general duty "to provide suitable quarters and provide for the safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States[.]"  With respect to property, "[f]ederal prison officials are not the insurers of an inmate's property.  They do, however, owe a duty of care under 18 U.S.C. § 4042(2) and may be liable for negligence."  *Kimberly v. Manspeaker*, 1998 WL 159014, *2 (D. Kan. March 13, 1998), *citing Sterling v. United States*, 85 F.3d 1225 (7th Cir. 1996) (prisoner

may obtain damages from corrections officer by showing the officer negligently lost or destroyed prisoner's property). The standard is one of reasonable care. *See Melvin v. United States*, 963 F.Supp. 1052 (D.Kan. 1997) (once a federal prison officer agreed to lock an inmate's cell, the officer had a duty to act with reasonable care).

Even if the BOP had a duty to ensure the security of the Plaintiff's possessions, the Plaintiff cannot establish breach under the facts of this case because he cannot establish that he lost any property. In fact, the Plaintiff expressly waived all claims for the loss of the property packed on April 9, 2006 when he signed the Personal Property Record on April 13, 2006, indicating that the only missing property consisted of: 1 radio, 1 set of headphones, 2 shorts, sweat clothes, and 1 sweat shirt. (Plaintiff's Inmate Personal Property Record, attached to Complaint [1]; Defendant's Exhibit #7 [20-7], block 10b). When the Plaintiff signed the inventory on April 13, 1006, he certified that all but those specific items had been accounted for. The Plaintiff is bound by this certification and has waived any claim for loss of the items at issue in this suit. *See generally* F.R.E. 801(d)(2). Furthermore, all of the property which the Plaintiff claims is missing is listed on the April 13 Inventory as accounted for. (Plaintiff's Inmate Personal Property Record, attached to Complaint [1]; Defendant's Exhibit #7 [20-7], block 10b).

Block 10b of the inventory form states:

> Upon release of the inmate from the unit, detention, etc., the releasing officer is to give the inmate that property stored as a result of the inmate's housing. The inmate certifies release of the property, except as noted on this form, and receipt of a copy of the inventory by signing below. When the inmate claims a discrepancy in the inventory, the releasing officer shall attempt to resolve that discrepancy. If the inmate states that there is missing or damaged property, this information should be noted under comments.

On that form, it is indicated that the Plaintiff reviewed his property and listed those items he found missing (radio, headphones, shorts, sweats, sweatshirt). Those items were returned to the Plaintiff, and the Plaintiff signed for those items on April 24, 2006. (Defendant's Exhibit 8 [20-8], block 10(b)).

Although the Fourth Circuit Court of Appeals has not directly addressed the waiver issue in the context of prisoner claims for lost property, the District Court for the District of South Carolina recently observed, with respect to the Inmate Personal Property Record, that "[G]enerally, by signing such a form the plaintiff waives any claim regarding property damage or destruction." *Mathis v. Hamidullah*, 2006 WL 3628027 at * 4 (D.S.C. Dec. 11, 2006) (*citing Baker v. Smith*, 1002 WL 86721, at *2 (10th Cir. April 27, 1992). Other district courts have found that prisoners who sign a form certifying that all property has been accounted for waive any claim for loss of the items on that form. For example, in *Riley v. United States*, 938 F.Supp. 708, 709 (D.Kan. 1996), the United States District Court for the District of Kansas held that by signing the Inmate Personal Property Record without noting any discrepancies, loss or damage to property, an inmate waives any claim regarding that property. *Id*. The court in *Riley* granted summary judgment in favor of the United States, finding that the inmate had waived his right of action regarding loss of property by certifying the accuracy of the inventory. *Id.*

In the present case, the Plaintiff did not indicate he had lost the $319.00 worth of property at issue at the time he reviewed and signed the property forms. During the Plaintiff's initial review of his personal property, he signed the inventory form indicating the he was only missing 1 radio, 1 headphones, 2 shorts, sweat clothes, and 1 sweat shirt. (Plaintiff's Inmate Personal Property Record, attached to Complaint [1]; Defendant's Exhibit #7 [20-7], block 10b). By signing this inventory form, the Plaintiff certified that the remaining property on the inventory form was a complete and accurate accounting of his personal property. (*Id*.). On April 24, 2006, a prison official found the items the Plaintiff had listed as missing (radio, headphones, shorts, sweats, sweatshirt) and Officer D. Wells signed the form as the officer who returned those items to him. (Defendant's Exhibit #8, block 10b). The Plaintiff also signed the inventory form indicating this was a complete and accurate accounting of his personal property. (*Id.*).

In *Wolff v. Hood*, 242 F.Supp.2d 811, 821 (D.Ore. 2002), the District Court for the District of Oregon held that by signing the Inventory Records, the plaintiff acknowledged the

accuracy of the inventory. The *Wolff* Court entered summary judgment on the basis that the prisoner had failed to submit evidence establishing he had possessed the property. *Id.*; *see also Baker v. Smith*, 771 F.Supp. 1156, 1158-59 (D.Kan. 1991) ("by signing the form..., plaintiff effectively waived any claim regarding property damage"); *Taylor v. U.S.*, 2006 WL 2350165 at *2 (W.D.Va. 2006) (entering summary judgment on the basis of the inmate's signing an inmate personal property record certifying the accuracy of the inventory); *Deutsch v. U.S.*, 1996 WL 24754 *3 (E.D.Pa. 1996) (by signing the inventory records, inmate certified the accuracy of the inventory and waived any later argument that his property was inaccurately accounted for or damaged); *Franks v. U.S.*, 1990 WL 47771 *2 (D.Kan. 1990) (summary judgment appropriate where inmate signed a property release contradicting complaint for lost property).

Here, the Plaintiff signed two inventory forms certifying that the property he now claims is missing had been accounted for. On the first inventory, the Plaintiff did indicate he was missing items of property, but those items were not the items he now claims were lost, and those items later were located and returned to him, as indicated on the second inventory he signed. Significantly, the Plaintiff did not indicate on either inventory form that the items he now seeks compensation for were missing. Instead, the property the Plaintiff is suing for was listed on the inventory form, and he signed the inventory form acknowledging that he received these items. Therefore, the even if the Plaintiff's property had been lost, the Plaintiff waived any right he had to recover the property when he signed the Inmate Personal Property Record. Therefore, it is recommended that the Defendants be granted summary judgment.[5]

---

[5] Although the Defendant argues that the Plaintiff's action should be dismissed as frivolous under the *in forma pauperis* statute because of the de minimis value of his claim, the undersigned notes that the Plaintiff did **not** bring his suit IFP, but instead signed and filed a Statement of Assets (Consent to Collection). [9]  Therefore, the Defendant's argument is without merit.

## **RECOMMENDATION**

It is recommended that the Defendants' motion for summary judgment [20] should be granted.

_____
GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

October 5, 2007

Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).